**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Norman Horner, | : | Case No. 3:09 CV 0414 |
| Plaintiff, | : | |
| v. | : | |
| Jeffrey Klein, Fire Chief, et al., | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Defendants. | : | |

This case, filed pursuant to 42 U. S. C. § 1983, was referred to the undersigned Magistrate for report and recommendation. Pending are: (1) Plaintiff's Motion to Strike, Defendants' Opposition and Plaintiff's Reply and (2) Defendants' Motion for Summary Judgment, Plaintiff's Opposition and Defendants' Reply (Docket Nos. 30, 41, 43 & 46, 47, 52). For the reasons that follow, the Magistrate recommends that the Court grant the Motion for Summary Judgment and deny the Motion to Strike.

### I. THE PARTIES.

Plaintiff is an adult citizen of Ohio and has been a resident of Perrysburg, Wood County, Ohio, for more than eight years (Docket No. 1, ¶ 4).

The City of Perrysburg is located in Wood County, Ohio. It is governed by a mayor and a city council. The city administration consists of nineteen departments including a department of fire and

emergency medical services. Www.ci.perrysburg.oh.us.

Defendant Nelson Evans, the former Chief of Police for the City of Perrysburg, was elected to a four-year term as mayor effective January 1, 2006. Www.ci.perrysburg.oh.us. He is sued in his individual and official capacities.

Defendant Jeffrey Klein, a full-time City of Perrysburg firefighter/paramedic, was promoted to assistant chief in 1997. Defendant Klein became chief on September 4, 2007. Www.ci.perrysburg.oh.us. He, too, is being sued in his individual and official capacities

## II. JURISDICTION.

This Court has jurisdiction over this action pursuant to 28 U. S. C. § 1331 and 1343. Venue is proper in the Northern District of Ohio under 28 U. S. C. § 1391.

## III. FACTUAL BACKGROUND.

Plaintiff was employed by the City of Perrysburg as a full-time firefighter and paramedic on October 16, 1985. Plaintiff was a member of the Perrysburg Firefighters Local 3331 (Local 3331) (Docket No. 1, ¶s 7 & 8). In 1993, Plaintiff was promoted to assistant fire chief of the division of fire and rescue. His administrative responsibilities as assistant chief included exercising command over an eight-hour work shift of firefighters and emergency scenes, enforcing emergency medical service protocols, writing grants, recommending discipline for personnel and designing budget recommendations and specifications for ambulances or equipment (Docket No. 1, ¶ 7; Docket No. 32, Exhibit 1, pp. 43, 50).

Defendant Klein was a subordinate on Plaintiff's shift for a couple of years. In this relationship, Defendant Klein and Plaintiff worked together with minimal conflict. In Plaintiff's view, they were "good friends" (Docket No. 32, Exhibit 1, p. 66). In 2006, Plaintiff and Defendant Klein were among six semifinalists for the position of chief with Defendant Klein receiving the appointment (Docket No. 32,

Exhibit 1, p. 64). When he became chief, Defendant Klein conducted personnel meetings. During the course of those meetings, Defendant Klein occasionally used the catch phrase "career enders" (Docket No. 31, Exhibit 32, p. 77).

On March 19, 2007, the deputy chief of the Perrysburg Fire Department, Earl Wade Johnson, issued Plaintiff a "written verbal warning" for failure to respond while on medic stand-by[1] (Docket No. 32, Exhibit 1, p. 108 of 137). Upon investigation, Mr. Johnson rescinded the verbal write-up as he erroneously concluded that Plaintiff had not responded (Docket. No. 32, Exhibit 5, p. 19).

On or about January 4, 2008, Defendant Klein and Tom Granata, a fellow firefighter and president of Local 3331, were sitting in the break room of the fire department (Docket No. 1, ¶ 8; Docket No. 32, Exhibit 1, p. 85). During the course of the conversation, Defendant Klein chided Tom Granata for referring to him by a nickname "Calvin" [ Klein]. Defendant Klein left the room and returned. Upon his return Defendant Klein began to dance with gestures that included throwing his crotch out and rubbing his crotch up and down Tom Granata's shoulder (Docket No. 6, ¶ 9, Docket No. 32, Exhibit 1, p. 85-86).

On January 3 and 4, 2008, the deputy chief, Mr. Johnson, forwarded by electronic mail, requests that Plaintiff complete fire report 1591 (Docket No. 32, Exhibit 5, p. 35 of 36). On January 5, 2008, Plaintiff responded that he was unable to obtain the "run sheets" that were needed to encode the 1591 report until Monday (Docket No. 32, Exhibit 5, pp. 97-98). Attributing the inability to complete the 1591 report to Plaintiff's flawed execution of procedure, Mr. Johnson prepared a written verbal warning for Plaintiff's failure to encode the fire reports into the departmental database on January 8, 2008 (Docket No. 1, ¶ 9; Docket No. 32, Exhibit 1, p. 87 of 137; Docket No. 32, Exhibit 2, p. 160; Docket No. 6, ¶ 9).

---

[1] Under the Perrysburg Fire Division General Policies, Policy Number 18, "by signing up for stand-by, you are accepting the responsibility to be available and ready to respond to calls during the time period that you have committed to (Docket No. 32, Exhibit 1, pl. 107 of 137).

Earlier that day on January 8, 2008, Plaintiff conferred with Defendant Klein concerning personnel issues. During the conversation, Plaintiff took a memorandum prepared by Defendant Klein, placed it on his desk and stated "Sir, if you want to talk about career enders, rubbing your crotch against an employee at work would be a career ender." In his deposition, Defendant Klein acknowledged that such behavior would not endear him to John P. Alexander, the city administrator and director of public safety (Docket No. 32, Exhibit 1, pp. 92 & 103 of 137). In fact, Defendant Klein testified that he agreed with Plaintiff's assessment that this event had the ability to be misconstrued (Docket No. 1, Exhibit 2, p. 159).

On February 28, 2008, Plaintiff was given a written warning for an alleged failure to respond to the scene of a medic emergency call with an engine, crew and medical personnel (Docket No. 32, Exhibit 1, p. 95 of 137). Plaintiff argues that he was suspended without pay for a 24-hour shift. Plaintiff pursued an administrative appeal of this suspension directly to Defendant Klein. Defendant Evans affirmed Defendant Klein's decision and Plaintiff served the suspension on May 28, 2008 (Docket No. 1, ¶ 10).

Plaintiff filed a grievance, claiming that he had a legitimate reason for his failure to respond on April 13, 2008. The city administrator and director of public safety denied the grievance and affirmed the sanction of an eight-hour shift suspension (Docket No. 32, Exhibit 1, p. 102 of 137; Docket No. 6, ¶ 10; Docket No. 32, Exhibit 1, p. 96 of 137). It was not until June 18, 2008, that a hearing was convened to address a grievance related to a purported missed medic call on April 13, 2008. Plaintiff's grievance was initially denied by the human resources manager, Kelly Louderback (Docket No. 32, Exhibit 32, p. 99 of 137). At the hearing, Defendant Klein interjected that Plaintiff should be demoted for improperly disclosing information to a TOLEDO BLADE reporter about a fire that occurred on May 31, 2008 (Docket No. 1, ¶ 15). On July 8, 2008, the city's human resources manager informed Plaintiff, in writing, that the City of Perrysburg was considering disciplinary action as a result of the exchange with the TOLEDO BLADE

4

reporter. Plaintiff filed a grievance. The hearing initially scheduled for July 15, 2008 was postponed pending Plaintiff's completion of leave under the Family Medical Leave Act (FMLA) (Docket No. 6, ¶ 15)

Plaintiff went to the City of Perrysburg's human resource officer to complain that his superiors were retaliating against him because he asked Defendant Klein to stop rubbing his crotch (Docket No. 32, Exhibit 1, p. 24 of 137). On or about April 25, 2008, the parties concur that Plaintiff was given a "written verbal warning" for unauthorized communications with human resource officer in contravention of the Perrysburg Fire Division General Policies[2] (Docket No. 1, ¶ 11; Docket No. 32, Exhibit 1, p. 104 of 137). The sanction was affirmed (Docket No. 6, ¶ 11).

On or about May 2, 2008, Plaintiff lodged a charge of discrimination with the Ohio Civil Rights Commission (OCRC) alleging unwelcome harassment through excessive discipline in retaliation for engaging in protected speech (Docket No. 1, ¶ 12, Docket No. 32, Exhibit 1, p. 134 of 137). The OCRC issued a "no probable cause" determination dated March 12, 2009 (Docket No. 6, ¶ 12; Docket No. 32, Exhibit 1, pp. 136 of 137 - 137 of 137).

On May 5, 2008, Defendant Evans advised Plaintiff, in writing, that he was given a 24-hour shift unpaid suspension, with sixteen hours held in abeyance as punishment for his failure to perform satisfactorily when he failed to respond to a medic call (Docket No. 32, Exhibit 1, p. 101 of 137).

On May 31, 2008, Defendant Klein appeared at the scene of a fire in Perrysburg and relieved Plaintiff of his command. After the fire, Plaintiff was contacted by a reporter for the TOLEDO BLADE (Docket No. 1, ¶ 13). Defendant Klein admits that he arrived at the fire scene approximately twenty

---

[2] Rule 1 of the policy states "any member guilty of bypassing the chain of command except as provided below, will be subject to disciplinary action." Rule 2 provides that any member of the division who has a grievance against any superior officer or complaint concerning the conduct of a superior officer, shall request a meeting with the superior officer at the next highest level in the chain of command (Docket No. 32, p. 105 of 137).

minutes after it started and he expressed concern about various matters to several command officers at the scene (Docket No. 6, ¶ 13).

On June 3, 2008, Plaintiff was ordered "off work" by his psychologist pending approval of an extended leave period under the FMLA. On June 11, 2008, Plaintiff was given a verbal warning for not responding to a call. A disciplinary action ensued on July 18, 2008. Defendant Klein affirmed the discipline on September 8, 2008 (Docket No. 1, ¶ 14).

Defendants suggest that Plaintiff submitted his request for FMLA leave on June 12, 2008, to the City of Perrysburg. Neither the fire division nor human resources department was aware that he commenced his FMLA leave on June 11, 2008 (Docket No. 6, ¶ 14).

On June 24, 2008, Defendant Klein formerly requested that Plaintiff be demoted to the position of firefighter/paramedic (Docket No. 6, ¶ 15).

On August 14, 2008, Ms. Louderback notified Plaintiff that his leave was "coming to a close" and that he should report to work on August 29, 2008 (Docket No. 32, Exhibit 1, p. 127 of 137). Dr. Trudy Bond, Ed. D., authorized Plaintiff to return to work on August 29, 2008 (Docket No. 32, Exhibit 1, p. 128 of 137).

On September 4, 2008, a pre-disciplinary hearing was convened. Defendant Klein overruled Plaintiff's grievance pertaining to the June 11, 2008, failure to respond charge. Following the hearing, Plaintiff was taken to the emergency room for treatment of abnormal blood pressure. Ms. Louderback ordered Plaintiff to return to work on September 8, 2008 as he had exhausted all sick, compensatory, vacation and FMLA leave (Docket No. 32, Exhibit 1, p. 129 of 137).

Plaintiff was demoted on September 12, 2008 (Docket No. 1, ¶ 16; Docket No. 6, ¶ 16). On September 12, 2008, Dr. Michelle Matousek ordered that Plaintiff refrain from work until his hypertension

was controlled (Docket No. 32, Exhibit 1, p. 130 of 137).  Defendant Evans granted Plaintiff leave without pay until September 22, 2008 (Docket No. 32, Exhibit 1, p. 131 of 137).  Plaintiff failed to appear on September 22, 2008 (Docket No. 1, ¶ 17; Docket No. 32, Exhibit 1, p. 132 of 137).  By correspondence dated September 23, 2008, Defendant Evans terminated Plaintiff for non-disciplinary reasons (Docket No. 6, ¶ 17; Docket No. 32, Exhibit 1, p. 132 of 137).  A hearing was conducted on October 22, 2008, to reconsider the matter of Plaintiff's employment with the City of Perrysburg.  Defendant Evans affirmed the non-disciplinary termination of Plaintiff's employment (Docket No. 32, Exhibit 1, p. 133 of 137).

## IV.  THE MOTION TO STRIKE.

Defendants supplemented their Motion for Summary Judgment with an Affidavit and Second Affidavit of Kelly P. Louderback, Human Resources Manager for the City of Perrysburg, in which she acknowledges receipt of Plaintiff's charge from OCRC (Docket Nos. 33 & 44).  Filed contemporaneously with the Reply to the Response to the Motion for Summary Judgment was the Affidavit of Thomas Granata in which he explains what happened in the sexually suggestive encounter with Defendant Klein (Docket No. 45).  Plaintiff seeks an order striking these Affidavits or for Leave to file a Sur-reply Memorandum in Opposition.

Under FED. R. CIV. P. 12(f), the court may strike from a **pleading** any redundant, immaterial, impertinent, or scandalous matter.  A motion to strike is addressed to the sound discretion of the trial court. *Barnes v. City of Toledo,* 2010 WL 1268044, *13 ((N. D. Ohio 2010) (*citing In re Keithley Instruments, Incorporated,* 599 F. Supp.2d 908, 911 (N. D. Ohio 2009) (*citing Ameriwood Industrial International Corporation v. Arthur Andersen & Company*, 961 F. Supp. 1078, 1083 (W. D. Mich.1997)).  Motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant.  *Id.* (*citing Frisby v. Keith D. Weiner & Associates Company, LPA,* 2009 WL

3818844, *1 (N. D. Ohio 2009) (*citing Brown & Williamson Tobacco Corporation v. United States,* 201 F.2d 819, 822 (6th Cir. 1953); *see also United States v. American Electrical Power Services Corporation,* 281 F. Supp. 931, 935 (S. D. Ohio 2002); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1382 (3rd ed. 2004) ("[T]here appears to be general judicial agreement ... that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice ..."). Exhibits attached to motions are not pleadings and are outside the scope of Rule 12(f). *Rhea v. Dollar Tree Stores*, 395 F. Supp. 2d 696, 702 (W. D. Tenn. 2005).

The Affidavits/Declarations of Kelly Louderback and Tom Granata are not pleadings and therefore, not within the scope of Rule 12(f). The attachment submitted by Ms. Louderback corroborates Plaintiff's claim that he pursued his rights under the Civil Rights Act of 1964. The allegations in the Affidavit of Mr. Granata corroborate Plaintiff's claim that Defendant Klein rubbed his crotch against Tom Granata's shoulder or arm (Docket No. 45). The Court should deny the Motion to Strike and Plaintiff's request to lodge a response to the Affidavits/Declarations.

## V. THE MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts

showing that there is a genuine issue for trial." *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Id*. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

### VI. ANALYSIS OF THE MOTION FOR SUMMARY JUDGMENT.

In the Complaint, Plaintiff alleges that (1) Defendants retaliated and discriminated against him in violation of OHIO REV. CODE § 4112; (2) Defendant Klein's conduct was unwelcome sexual harassment that created a hostile work environment; and (3) Defendant Evans failed to supervise, maintain control of, train or otherwise prepare Defendant Klein to properly conduct the investigation and imposition of discipline against Plaintiff.

Defendants argue that generally, Plaintiff's retaliation claim under OHIO REV. CODE § 4112.01(I) is meritless for several reasons. First, Plaintiff cannot make a prima facie claim for sexual harassment. Second, Plaintiff is not protected under OHIO REV. CODE § 4112.01(I) for speaking out about Defendant Klein's actions directed at a third party. Third, Plaintiff did not oppose discrimination within the meaning of the opposition clause.

**1.    PLAINTIFF'S CLAIM FOR RETALIATORY DISCHARGE.**

In analyzing retaliatory discharge claims, the Ohio courts rely on federal case law. *Majewski v. Automatic Data Processing*, 274 F. 3d 1106, 1117 (6th Cir. 2001) (*citing Peterson v. Buckeye Steel Casings*, 133 Ohio App. 3d 715, 729 N. E. 2d 813, 821-822 (1999)). The plaintiff can establish a prima facie case of retaliatory discharge by showing that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) a causal link exists between a protected activity and the adverse action. *Id.* (*citing Peterson*, 729 N. E. 2d at 822). Defendants have the burden to articulate a legitimate, nondiscriminatory reason for their action if Plaintiff successfully establishes a prima facie case. *Id.* If Defendants do so, then the burden shifts back to Plaintiff to show that Defendants articulated reason was a pretext to mask its true retaliatory intent. *Id.*

Plaintiff seeks protection under the opposition clause of the Ohio statue for what he considers "protected activity" under OHIO REV. CODE § 4112.02(I). The anti-retaliatory provision of OHIO REV. CODE § 4112.02(I) provides, in relevant part, that is it an unlawful discriminatory practice for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the REVISED CODE. *Hughes v. Miller,* 181 Ohio App.3d 440, 447, 909 N.E.2d 642, 647 (2009).

As stated above, OHIO REV. CODE § 4112.02(I) prohibits discrimination in two situations: (1) where an employee has opposed any unlawful discriminatory practice, the "opposition clause"; and (2) where an employee has made a charge, testified, assisted or participated in any manner in any investigation, proceeding, or hearing under Sections 4112.01 to 4112.07 of the Revised Code, the "participation clause." "Oppose" carries its ordinary meaning of resisting or contending against. *Crawford v. Metropolitan Government of Nashville and Davidson County,* 129 S. Ct. 846, 851 (2009). "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, and may be used to speak of someone who has taken no action at all to advance a position beyond disclosing it. *Id.* Thus, a person can "oppose" by responding to someone else's questions just as surely as by provoking the discussion. *Id.*

In the *Crawford* paradigm, the plaintiff spoke out about sexual harassment, not on her own initiative, but in response to questions posed during an investigation of a co-worker's complaints. *Id.* at 851. Here, Plaintiff has failed to establish that the statement to Defendant Klein is protected because it does not amount to complaint about alleged unlawful employment practices against the employees. Ostensibly, Plaintiff warned Defendant Klein that he exercised poor judgment and the consequences for exercising poor judgment could affect the progression of his career. Neither Plaintiff nor Defendant Klein took action to advance the discussion beyond the disclosure of Plaintiff's opinion. The argument is unconvincing that Plaintiff's admonishment is covered by the opposition clause.

The protections of the participation clause, however, extend to Plaintiff when he participated in filing a charge to enforce his civil rights or approached the human resources personnel about retaliatory treatment. Plaintiff satisfied the first step of the inquiry into his prima facie case for retaliation.

With respect to the second step of the inquiry, Plaintiff was subjected to adverse employment actions including demotion and subsequent discharge.

The third step of the inquiry required Plaintiff to show a causal connection between the filing of the protected activities and the adverse action. A causal connection is shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation. *Nguyen v. City of Cleveland*, 229 F. 3d 559, 566 (6th Cir. 2000). When an adverse employment action occurs very close in time after an employee learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Mickey v. Zeidler Tool and Die Company,* 516 F. 3d 516, 525 (6th Cir. 2008). Where the temporal proximity is not unusually suggestive that there was a link between the retaliatory conduct and the protected activity, the plaintiff must offer additional evidence to establish causation. *Id.* In *Mickey*, the plaintiff was fired on the day that his employer learned that he had filed an EEOC charge. *Id.*

Initially, the Magistrate notes that the record lacks direct evidence linking the demotion or discharge to Plaintiff's filing of the EEOC discrimination charges or his registering a complaint with the human resources department. Here, four months elapsed between the time that Plaintiff's employer was apprised that a charge had been filed with the EEOC and Plaintiff's demotion; five months elapsed between the time that Plaintiff's employer was apprised that a charge had been filed with the EEOC and Plaintiff's discharge, and five months elapsed between the time that Plaintiff approached human resources personnel and his discharge. When compared to *Mickey,* these lapses of time do not persuade the Magistrate that the temporal proximity of the filing of a charge with the EEOC or registering a complaint with human resources to the impending discharge or demotion is suggestive that any of these acts were connected.

Assuming *arguendo* that there is a link between the filing of the charge and Plaintiff's discharge or demotion, the burden shifts to Defendants to articulate a legitimate, non discriminatory reason for discharge. Defendants have proffered compelling evidence that Plaintiff had been given at least two verbal

12

warnings for failure to perform satisfactorily, suspended for failure to respond appropriately, relieved of duty at the fire scene and admonished for dispensing with protocol. However, Defendant Evans fired Plaintiff once he failed to report to work after the expiration of his leave under FMLA. The Magistrate finds that discharge for failure to go to work is not pretext but qualifies as a legitimate, nondiscriminatory reason for discharge.

Pretext can be demonstrated by showing that the proffered reason has no basis in fact, did not actually motivate the defendant's challenged conduct or it was insufficient to warrant the challenged conduct. *Bender v. Hecht's Department Stores*, 455 F. 3d 612, 624 (6th Cir. 2006) (*citing Wexler v. White's Fine Furniture, Incorporated*, 317 F.3d 564, 576 (6th Cir. 2003) (*quoting Dews v. A.B. Dick Company,* 231 F.3d 1016, 1021 (6th Cir. 2000)). At this final stage, " '[t]he burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff.' " *Id.* (*citing Gragg v. Somerset Technical College*, 373 F.3d 763, 768 (6th Cir. 2004) (*quoting Wilkins v. Eaton Corporation*, 790 F.2d 515, 522 (6th Cir. 1986)).

Plaintiff argues that there are alternate inferences to be drawn from the Defendants' decisions to discharge him. Specifically, the discharge was sanctioned because he spoke out against Defendant Klein. However, Plaintiff failed to produce credible evidence, which if believed as true, resolves all doubts as to whether Plaintiff took an overt stand or made overt statements about Defendant Klein. Construed in a light most favorable to Plaintiff, the evidence fails to show that Plaintiff's discharge was motivated by his filing a charge with the EEOC or his complaint to the human resources department or that the reasons for discharge were insufficient to warrant the discharge. Moreover, Plaintiff has failed to offer evidence sufficient to show a genuine issue as to any of these material facts. Therefore, Defendants' proffered explanation for discharging Plaintiff is persuasive.

**2. PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT.**

Plaintiff argues that the inappropriate gestures directed toward firefighter Tom Granata were facially sexual harassment. Plaintiff argues that Defendant Klein's calculated act of inappropriate conduct created a hostile work environment in violation of OHIO REV. CODE § 4112.02.

Sexual harassment in the form of hostile work environment is unlawful under OHIO REV. CODE § 4112.02. The Ohio Supreme Court has held that courts should apply Title VII federal cases to interpret issues in sexual harassment cases. *Little Forest Medical Center of Akron v. Ohio Civil Rights Commission,* 61 Ohio St. 3d 607, 609-610, 575 N. E. 2d 1164 (1991). Accordingly, a plaintiff may establish a violation of OHIO REV. CODE § 4112.02(A)'s prohibition of discrimination "because of *** sex" by proving either of two types of sexual harassment: (1) "*quid pro quo*" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment. *McCormick v. Kmart Distribution Center,* 163 F. Supp.2d 807, 815 (N. D. Ohio 2001) (*citing Hampel v. Food Ingredients Specialities, Incorporated*, 89 Ohio St.169, 175, 729 N. E. 2d 776, 732 (2000)).

To establish a prima facie case of sexual harassment based on hostile work environment, a plaintiff must present evidence demonstrating that (1) he or she is a member of a protected class; (2) he or she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her or his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Gallagher v. C.H. Robinson Worldwide,* 567 F.3d 263, 270 (6th Cir. 2009) (*citing Grace v. USCAR,* 521 F. 2d 655, 678 (6th Cir. 2008)). To establish harm "based on sex", a plaintiff must show that

14

but for his or her sex, he or she would not have been the object of harassment. *William v. General Motors Corporation*, 187 F. 3d 553, 565 (6th Cir. 1999) (*citing Henson v. City of Dundee*, 682 F. 2d 897, 904 (11th Cir. 1982)).

The Magistrate finds that evidence is lacking as to elements two and three. Plaintiff argues that Defendant Klein's sexually suggestive gestures toward Tom Granata's arm were the apex in a history of aggressive sexual innuendo from Defendant Klein. However, there is no genuine issue as to any material fact as whether the harassment, if any, emanating from his observation or his complaints to human resources was based on Plaintiff's gender. The Magistrate cannot find, based on the evidence, that but for his gender, Plaintiff would not be the object of harassment.

After giving Defendant Klein career advice, Plaintiff, too, made a series of decisions for which he was disciplined. However once he filed his claim with EEOC and the human resources officer, Plaintiff established that he was not sanctioned or reprimanded for any new infractions. Plaintiff undoubtedly suffered stress from the impact of these events as evidenced by the spike in blood pressure which resulted in emergency room treatment after the September 4, 2008, pre-disciplinary hearing. What is missing from this proffer is evidence that these events interfered with Plaintiff's work performance. In addition, Plaintiff fails to go beyond the pleadings and present some type of concrete evidentiary material to show that these circumstances created an **objectively** intimidating, hostile, or offensive work environment.

Since Plaintiff cannot satisfy the second and third elements, he cannot make a prima facie case for sexual harassment based on hostile work environment

    **3.**    **CLAIM AGAINST DEFENDANT EVANS.**

Plaintiff asserts that Defendant Evans failed to supervise, maintain control of, or train Defendant Klein to properly dispense discipline.

It is well established the liability under Section 1983 does not attach under the doctrine of *respondeat superior. Monell v. Department of Social Services,* 98 S. Ct. 2018, 2037 (1978). Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training. *Myers v. Hensley,* 2010 WL 3522492, *8-9 (N. D. Ohio2010) ( citing Sova v. City of Mt. Pleasant,* 142 F.3d 898, 904 (6th Cir. 1998); *City of Canton v. Harris,* 109 S. Ct. 1197, 1205-1206 (1989)). A supervisor cannot be held liable for failure to supervise, control, train the offending individual unless the supervisor encouraged the specific incident of misconduct or in some other way participated in it. *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999) *cert. denied,* 120 S. Ct. 2724 (2000). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officer. *Id.* Mere knowledge of allegedly unconstitutional action is insufficient to hold a supervisor liable under Section 1983. *Bellamy v. Bradley*, 729 F. 2d 416, 421 (6th Cir. 1984) *cert. denied*, 105 S. Ct. 156 (1984). Nor does an official's alleged failure to adequately investigate claims of misconduct rise to the level of encouragement that would make an official liable for misconduct of a subordinate. *Id.*

Here, it appears that Defendant Evans is named as a defendant because of his supervisory position. However, Plaintiff has failed to allege facts showing that Defendant Evans implicitly authorized, approved or knowingly acquiesced in Defendant Klein's conduct stemming from the conversation with Plaintiff about career enders. Therefore, the Magistrate recommends that the Court dismiss Plaintiff's claims against Defendant Evans for failure to adequately supervise.

## VII. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Motion to Strike, grant the Motion for Summary Judgment and terminate the referral to the Magistrate.

                                                                /s/Vernelis K. Armstrong
                                                                United States Magistrate Judge

Date:   November 23, 2010

### VIV. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.