IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Norman Horner,                         Case No. 3:09 CV 414

           Plaintiff,                MEMORANDUM OPINION
                                   AND ORDER
      -vs-
                                   JUDGE JACK ZOUHARY
Jeffrey Klein, et al.,

           Defendants.

**INTRODUCTION**

Plaintiff Norman Horner ("Horner") brought this action against Defendants in their respective official and individual capacities: Jeffrey Klein, Fire Chief of Perrysburg, Ohio ("Chief Klein"); and Nelson Evans, Mayor of Perrysburg, Ohio ("Mayor Evans") (Doc. No. 1). Horner makes two claims: (1) violation of R.C. § 4112.02(I) by retaliating against Horner for opposing sexual harassment, and (2) violation of Horner's First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Defendants filed a Motion for Summary Judgment (Doc. No. 30); Horner opposed (Doc. No. 41); Defendants replied (Doc. No. 43). Also pending is Horner's Motion to Strike (Doc. No. 46), which Defendants have opposed (Doc. No. 47).

The case was referred to Magistrate Armstrong for a Report and Recommendation ("R&R") which recommends the Court grant the Motion for Summary Judgment and deny the Motion to Strike (Doc. No. 53). Horner filed an Objection (Doc. No. 54); Defendants filed a Response (Doc. No. 55).

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has reviewed the Magistrate's findings *de novo*. For the reasons set forth below, this Court adopts the Magistrate's recommendations, though based on other grounds.

## BACKGROUND

Horner was a full-time firefighter and paramedic for the City of Perrysburg from October 1985, until his termination in September 2008 (Doc. No. 1, ¶¶ 7, 17). Horner was promoted from fireman to assistant fire chief in 1993. As assistant chief, he exercised command over firefighter work shifts and assumed other administrative duties (Doc. No. 1, ¶ 7). Klein also started off as a City of Perrysburg firefighter and worked as a subordinate to Horner for several years (Doc. No. 32-1, Tr. 66).[1] During this time, Horner and Klein were "good friends" (*id.*). Klein eventually became an assistant fire chief overseeing a different shift, until 2006, when Horner, Klein, and four other individuals were considered for the fire chief position (*id.* at 63–66). Klein was selected as fire chief, a position he continues to hold today.

The event that Horner claims started the chain of events that ultimately led to his termination, and this lawsuit, occurred on January 4, 2008. Horner and Tom Granata, a fellow firefighter and the local firefighter union president, were talking in the firehouse. Chief Klein was also in the room. After Granata made a comment using Chief Klein's nickname, "Calvin Klein," Klein made a brief comment about not using the nickname while he was in uniform, left the room, then came back a

---

[1] The referenced deposition transcripts and referenced exhibits are available as .pdf documents on CM/ECF but are neither consistently numbered nor paginated. Therefore, citations to deposition transcripts are denoted with the CM/ECF docket number and the identifier Tr., followed by the page number of the original deposition transcript (not the .pdf document page number); citations to other materials attached to the deposition transcripts are denoted with the CM/ECF docket number and the page number of the .pdf document.

couple minutes later.  When Chief Klein returned, Horner claims Chief Klein "started joking around" and did a little dance that included throwing his crotch out and rubbing his crotch on Granata's shoulder two or three times (Doc. No. 32-1, Tr. 85–86).  Granata had no reaction to Chief Klein's crotch dance and had no further discussions with Granata about the incident (*id.* at 90–91).

On January 8, four days later, Horner had a meeting with Chief Klein regarding a personnel issue (Doc. No. 32-2, Tr. 158).  During that meeting, the incident with Granata came up.  Referencing a memo Chief Klein had distributed to the entire fire department about "career ender" activities, one of Chief Klein's common phrases, Horner told Klein "Sir, if you want to talk about career enders, rubbing your crotch against an employee at work would be a career ender" (Doc. No. 32-1, Tr. 92).  Chief Klein agreed with Horner that his actions could have been misconstrued and might not be well-received by Perrysburg human resources officials (*id.*).

On the same day, Horner received a written verbal warning for his failure to timely file reports on fire "run sheet" reports (Doc. No. 32-2, at 63).  There is some dispute about whether Horner received the warning or if he refused to sign the notice (*Compare* Doc. No. 32-1, Tr. 93–95, *with* Doc. No. 32-2, Tr. 160).  Horner argues this is the first act of retaliation for his comment to Chief Klein regarding the incident with Granata.

However, Deputy Fire Chief Wade Johnson ("Johnson") sent several emails *prior* to January 8 requesting Horner file reports for two December 2007 fire runs (Doc. No. 32-5, at 34–35).  Horner emailed a response to Johnson, copying Chief Klein, explaining why he had not timely filed the reports (Doc. No. 32-5, at 36).  Johnson and Chief Klein found Horner's reasons for not filing the reports were not credible, thus resulting in the written verbal warning (Doc. No. 32-5, Tr. 98–99; Doc. No. 32-2, Tr. 164–66).

3

Following the events of January 8, Horner claims the retaliation for his comment about the Granata incident escalated through a series of communications and disciplinary actions. Several weeks later, Horner met with Kelly Louderback ("Louderback"), Perrysburg's human resources manager, to complain about the Granata incident, among other things. Louderback indicated that Horner did not appear to be personally offended by the incident but was concerned about Chief Klein being upset with Horner for bringing it up (Doc. No. 32-4, Tr. 25–26). Louderback conducted a brief investigation but found no basis for a complaint against Chief Klein (*id.* at 26–31). Louderback did not construe Horner's complaint about the Granata incident to implicate a sexual harassment claim (*id.* at 30–31).

On February 28, 2008, Deputy Chief Johnson gave Horner a written warning for an alleged failure to properly respond to a medic emergency call on February 26 (Doc. No. 32-1, at 95). On April 13, Horner again received discipline for failing to properly respond to a medic call. Chief Klein recommended a 24-hour unpaid suspension, with eight hours to be served and the remaining sixteen hours held in abeyance (Doc. No. 32-2, at 53–57). Defendant Evans, in his position of Perrysburg Mayor, imposed the eight-hour suspension (Doc. No. 32-1, at 101). Horner grieved the suspension; both Louderback and City Administrator John Alexander ("Alexander") denied the grievance, affirming the eight-hour unpaid suspension (Doc. No. 32-1, at 99, 102–03).

Horner also received disciplinary action in April 2008 for failing to follow chain of command procedures as set forth in the Fire Division General Policies (Doc. No. 32-2, at 59–60). Instead of speaking first with Chief Klein about his concerns, as required by the chain of command policy, Horner chose to speak directly with HR manager Louderback. Horner complained to Louderback about "continued retaliation" due to the "continued piling on of the writeups" (Doc. No. 32-1, Tr.

4

123–24). During their meeting, Horner also discussed numerous concerns pertaining to the operation of the fire department including a complaint about another assistant chief, Jeffrey McPherson, with whom Horner had a personality conflict (Doc. No. 32-4, at 15–16). After the meeting, Louderback followed up with Chief Klein about Horner's concerns regarding the disciplinary actions; Klein replied that Deputy Chief Johnson was working on Horner's discipline (*id.*).

In May 2008, Horner filed a charge with the Ohio Civil Rights Commission ("OCRC"), accusing the City of Perrysburg Fire Department of retaliation for his opposition to sexual harassment. In his OCRC statement, Horner identified his statement to Chief Klein about the crotch rubbing incident as the beginning of a series of disciplinary write-ups (Doc. No. 32-1, at 134–35). The OCRC charge also mentions "problems" with assistant chief Jeffery McPherson. Louderback received a copy of the OCRC charge on May 13 (Doc. No. 33 at 2). Chief Klein also likely became aware of Horner's OCRC charge sometime in May (Doc. No. 32-2, Tr. 171); it is not clear if or when Mayor Evans became aware of the charge. In March 2009, the OCRC determined there was no probable cause to believe that unlawful discrimination had occurred (Doc. No. 32-1, at 136–37).

Horner received yet more discipline in June 2008, including a warning for the failure to respond while on-call and a reprimand for improperly releasing information to the local newspaper (Doc. No. 32-1, at 110–15, 119–21). Horner disputed both disciplinary actions. He claimed he was on an approved Family Medical Leave Act ("FMLA") leave, effective June 3, 2008, the day he was allegedly on call. During the grievance proceedings, it was established that the failure to respond incident occurred on June 11, 2008. While it was undisputed that Horner was technically granted a FMLA leave beginning June 3, the application for FMLA leave was filed with the City on June 12, the day *after* the failure to respond, and requested the leave be retroactive to June 3. Because the

5

application for leave was filed after the infraction, Horner's grievance was denied (Doc. No. 32-1, at 110–15).

For improperly releasing information to the newspaper, the original reprimand indicated Horner had violated a chain of command rule by confirming to a news reporter certain details of an incident in which several firefighters were injured. However, in the course of investigating the incident during the grievance proceedings, Chief Klein discovered that Horner had not simply confirmed information to the reporter, as Horner claimed, but that Horner had actually provided the information to the reporter in violation of fire department rules. Based on Horner's allegedly dishonest statement that he only confirmed but did not provide information to the reporter, Chief Klein recommended that the written reprimand be affirmed and that Horner be demoted for his dishonesty and his history of disciplinary issues. After a hearing with Horner, Louderback, Fred Kyle (Perrysburg Fire Inspector), and Mayor Evans, Evans agreed with Chief Klein's recommendation to demote Horner. The demotion took effect in September 2008 while Horner was on FMLA leave (Doc. No. 32-1, at 120–26; Tr. 144–48).

The final turn of events that led to Horner's termination occurred in August and September 2008. As noted above, Horner had been granted FMLA leave effective June 3 and he remained on FMLA leave through the summer of 2008 (including during the grievance procedures related to the release of information to the newspaper). On August 14, Louderback advised Horner that he had used all twelve weeks allowed under his FMLA leave and that he would need to report to work on August 29 with a medical clearance from his doctor. The letter stated that if Horner failed to report to work, he would be considered absent without leave (Doc. No. 32-1, at 127). Horner's psychologist released him to return to work effective August 29 (Doc. No. 32-1, at 128).

6

Horner returned on August 29 and worked two or three shifts (Doc No. 32-1, Tr. 149, 152). During his shift on September 4, Horner had a high blood pressure episode and left work (Doc. No. 32-1, Tr. 152–53). Horner remained off work and was notified by Louderback on September 8 that he had exhausted all of his sick time, comp time, vacation, and FMLA leave. Horner's failure to return to work would be considered an absence without leave (Doc. No. 32-1, at 129).

Horner submitted a doctor's note dated September 12, stating that Horner should not return to work until his blood pressure was controlled and that he would be reevaluated in one month (Doc. No. 32-1, at 130). On September 16, Mayor Evans approved, in part, Horner's request for unpaid leave. Mayor Evans' letter required Horner to report back to duty on September 22 (Doc. No. 32-1, at 131). Horner did not return to work on September 22 and did not contact either the City or his union representative (Doc. No. 32-1, Tr. 151–52). Mayor Evans sent another letter terminating Horner "for non-disciplinary reasons" on September 23 due to Horner's failure to return to work (Doc. No. 32-1, at 132).

Horner, with legal counsel, challenged the termination at a hearing with Mayor Evans and Louderback in October 2008 (Doc. No. 32-1, Tr. 158). During the hearing, it was unclear when Horner would be able to return to work (Doc. No. 32-3, Tr. 26–29). Following the hearing, Mayor Evans affirmed Horner's termination (Doc. No. 32-1, at 133).

Horner then filed this lawsuit, alleging discrimination and retaliation because of his opposition to sexual harassment in connection with the incident between Chief Klein and Granata. Horner asserts Ohio state law claims for retaliatory discharge and hostile work environment as well as Section 1983 claims against Defendants for violations of the First, Fifth, and Fourteenth Amendments (Doc. No. 1, at 7–8).

**STANDARD OF REVIEW**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**ANALYSIS**

**Retaliatory Discharge**

The Magistrate recommends this Court grant summary judgment on Horner's retaliatory discharge claim, stating that there is no direct evidence linking Horner's demotion or termination to his alleged complaints of discrimination and that there were legitimate, non-discriminatory reasons for Horner's discharge (Doc. No. 53, at 12–13). Horner objects to the Magistrate's recommendation, arguing the Magistrate "did not properly align the evidence with the legal standard" and that there was a causal connection between Horner's protected conduct and the adverse actions taken by Defendants (Doc. No. 54-1, at 10, 14).

Generally, a plaintiff can establish a *prima facie* case of retaliatory discharge by showing that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) a causal link exists between a protected activity and the adverse action. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984); *Peterson v. Buckeye Steel Casings*, 133 Ohio App.

3d 715, 727 (Ohio Ct. App. 1999). Defendant has the burden to articulate a legitimate, nondiscriminatory reason for its action if plaintiff successfully establishes a *prima facie* case. *Id.* If defendant does so, the burden shifts back to plaintiff to show that defendant's articulated reason was a pretext to mask the true retaliatory intent. *Id.*

This Court agrees with the Magistrate's recommendation that Horner has made a *prima facie* showing for elements (1) and (2). At a minimum, (1) Horner engaged in a protected activity when he filed his OCRC charge, *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003); and (2), he was subject to adverse employment actions by being demoted and later terminated, *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999). Horner does not specifically object to these recommendations, although he claims multiple events, other than the filing of the OCRC charge, could be construed as protected activities, including his initial confrontation with Chief Klein and his complaints to HR manager Louderback (Doc. No. 54-1, at 10, 13). However, even assuming Horner is correct in identifying multiple instances of protected activity, that does not change this Court's analysis with respect to element (3), evidence of a causal link between the protected activities and Horner's demotion and termination.

This Court believes it unnecessary to engage in a lengthy discussion regarding temporal proximity to illustrate causation as undertaken in the R&R (Doc. No. 53, at 12) and Horner's objections (Doc. No. 54-1, at 12–14). Based on the undisputed facts, no genuine issue of material fact exists with respect to whether Horner's demotion or his termination were causally connected to Horner's protected activities because both adverse actions were taken as direct responses to violations of defined Perrysburg Fire Department rules.

9

The facts surrounding Horner's demotion as punishment for speaking with the news reporter preclude any causal linkage between Horner's comments about Chief Klein's crotch dance and the reasons for Horner's demotion. Horner admits that he spoke with the reporter about an incident in which four firefighters were injured at a house fire (Doc. No. 32-1, Tr. 142), and the news story cited Horner as the source of information (Doc. No. 32-1, at 116). The Perrysburg Fire Division General Policies, in effect at the time, explicitly state:

> <u>Rule 8</u>   No information relative to the business or affairs of the Division shall be furnished to persons not connected therewith. All bonafide requests for pertinent information shall be referred to the Division Administration. Interaction with any members of the news media shall be in compliance with all applicable prevailing policies and procedures in accordance with Public Records laws.

(Doc. No. 32-1, at 118).

Furthermore, Perrysburg Fire Division rules prohibit making false reports regarding personal conduct to any member of the Division. The rule states:

> <u>Rule 11</u>   Members are strictly prohibited from making false reports concerning personal character or conduct, to discredit or to the detriment [of] any member of the Division . . .

(Doc. No. 32-1, at 118).

This Court notes that while there may be a question of fact as to whether Horner lied to Chief Klein about what information was provided to the news reporter in violation of Rule 11, there is no dispute that Horner violated Rule 8. Were Horner's demotion based solely on a Rule 8 violation and it was Chief Klein alone that chose to impose the demotion, this Court might have some concerns about whether this was a retaliatory act by Chief Klein. That, however, is not the story here.

Chief Klein, who was able to recommend but not impose the demotion, suggested that demotion was proper based not only on the Rule 8 violation, but also a Rule 11 violation *and* "other

10

recent discipline issues" (Doc. No. 32-1, at 122). Horner was then able to grieve the demotion, a process that included HR manager Louderback, Horner's union representative (whom Horner alleges essentially sold him out by "not sticking up for [] me") (Doc. No. 32-1, Tr. 151–52), and Mayor Evans, who ultimately decided to impose the demotion. Yet despite the process he was afforded, Horner argues that the demotion was still caused, at least in part, by his comment to Chief Klein eight months prior.

Looking at the totality of the record, Horner's violation of the rules by speaking to the press, in combination with his prior disciplinary actions for failure to respond and failure to follow chain of command, provided a sufficient factual basis for Mayor Evans to demote Horner. While Horner may have felt "picked on," at no point does Horner dispute, nor could he, that each disciplinary action was based on a legitimate violation of fire department rules. And while Horner attempts to paint a picture of Chief Klein and Mayor Evans as hungry for retaliation based on one statement made months earlier, this allegation fails to show a causal link between a protected activity, whether that be Horner's statements to Chief Klein or Louderback or the OCRC charge, and the demotion.

Notwithstanding the demotion in early September, Horner effectively sealed his own fate with his decision to not return to work several weeks later. Horner's own failure to report to work and subsequent termination as a result of not returning to work was neither causally related to Horner's protected activity nor pretext for retaliatory action on the part of the Perrysburg Fire Department or Defendants.

The Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998). Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason

11

for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1117 (6th Cir. 2001). An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Id.* (quoting *Smith*, 155 F.3d at 807).

Here, the facts are clear that Mayor Evans fired Horner for not returning to work when instructed. The termination letter stated Horner's failure to return to work on September 22, 2008, was the reason for his firing (Doc. No. 32-1, at 132). Horner does not dispute that he did not return to work as required by the Perrysburg Fire Department and, indeed, Horner had made his own personal determination to not return to his job (Doc. No. 32-1, Tr. 152).

Despite Horner's protests of retaliation, even if taken as true, it is ultimately Horner who chose not to return to work when instructed that led to his firing. The Perrysburg Fire Department and Mayor Evans not only fulfilled their legal duties by allowing Horner to exhaust all of his available personal and FMLA leave time, but even extended Horner's unpaid leave upon his request. Furthermore, when Horner was given a hearing in October to reconsider his termination, it was still unclear when he could return to work (Doc. No. 32-1, at 133; Doc. No. 32-3, Tr. 26–29). Horner made neither a showing of causation or pretext, and summary judgment for Defendants is proper.

**Hostile Work Environment**

To establish a *prima facie* case of sexual harassment based on a hostile work environment, plaintiff must show: (1) he is a member of a protected class, (2) he was subjected to harassment, either through words or actions, based on sex, (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work

12

environment; and (4) there exists some basis for liability on the part of the employer. *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

The Magistrate recommends the Court grant summary judgment to Defendants on Horner's hostile work environment claim, finding no evidence to support elements two and three: that Horner was not subjected to harassment based on sex; and that the harassment did not have the effect of unreasonably interfering with Horner's work performance and creating an objectively hostile work environment (Doc. No. 53, at 14–15). Horner objects, arguing that simulated same-sex sexual acts are sufficient for a claim of harassment, and that Chief Klein's crotch dance and Horner's speaking out about the incident started a chain of events that was "sufficiently severe or pervasive to alter the conditions" of Horner's employment (Doc. No. 54-1, at 17) (quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986).

While this Court questions whether Horner could demonstrate that he is a member of protected class or that he was actually subjected to harassment based on his sex, this Court agrees with the Magistrate that Horner has failed to show that the alleged harassment created an objectively intimidating, hostile, or offensive work environment.

The Supreme Court has provided a number of factors to consider when determining whether an objectively hostile work environment exists: the frequency of the discriminatory conduct; the conduct's severity; whether it is physically threatening or humiliating or if it is a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and whether the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993) (internal quotations and

citations omitted). While a single instance of harassment can support a finding of hostile work environment liability, that single instance needs to be extremely egregious, such as a sexual assault of the victim. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995).

The facts here do not support a showing of an objectively hostile or abusive working environment. There is only one alleged incident of offensive conduct -- between Chief Klein and Granata in January 2008 -- that cannot be compared to a single egregious incident such as in *Tomka*. Granata, the individual directly involved in the incident, took no offense to Chief Klein's action and did not construe the action as a sexual "come on" (Doc. No. 45, at 2). The conduct at issue was neither physically threatening nor humiliating to Horner. While the conduct may have been slightly more than an offensive utterance, it was not significantly more offensive based on the totality of the circumstances and is firmly within the ambit of "male-on-male horesplay" identified by the Supreme Court as *not* indicative of a discriminatory condition of employment. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). And while Horner claims that a string of discipline flowed from his comments about that one incident, those acts of discipline were based on Horner's violations of rules and as such do not amount to a workplace that was "permeated with discriminatory intimidation, ridicule, and insult." Simply because Horner did not care for Chief Klein's action, and said as much to Chief Klein, does not allow Horner to act as he chooses in violating fire department policies and rules.

Finally, while Horner attempts to interject examples of Chief Klein sexually acting out in the workplace during the 1990s, these specious allegations do not help his argument. At the time of those prior incidents, Klein was not the chief of the fire department and there is no indication in the record

14

that Klein repeated these behaviors in the recent past. Such scuttlebutt has no bearing on an event that occurred more than ten years later (Doc. No. 41, at 2–3; Doc. No. 54-1, at 3).

**Section 1983 Claims**

The Magistrate recommends that this Court grant summary judgment on Horner's Section 1983 claims, finding that there was no factual basis for a *Monell* "policy or custom" claim (Doc. No. 53, at 16). *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Horner objects, reiterating his *Monell* claim for Mayor Evans' failure to supervise Chief Klein (Doc. No. 54-1, at 19), and arguing the Magistrate failed to address his claim that Mayor Evans failed to properly investigate whether discipline was genuinely warranted against Horner (Doc. No. 54-1, at 17).

This Court agrees with the recommendation that Horner has not shown a basis for a "policy or custom" claim under *Monell*. First, a supervisor cannot be held liable for failure to supervise unless the supervisor encouraged the specific incident of misconduct or in some other way participated in it. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982). Even if the supervisor is aware of, but does not take appropriate action, liability will not be imposed on the supervisor without a showing that the supervisor participated in or authorized the harassment. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Finally, liability under Section 1983 cannot be based upon "a mere failure to act." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998).

Horner failed to present any facts that meet these standards. At best, Horner has shown that Mayor Evans was aware of some, but perhaps not all, of the discipline imposed on Horner (Doc. No. 32-3, Tr. 37–39). This is far from the requisite showing that Mayor Evans' participated in or authorized some constitutional violation against Horner. Furthermore, Horner's claim that Mayor Evans failed to investigate is without merit because a mere failure to act is not sufficient to impose

15

Section 1983 liability. Accordingly, this Court adopts the Magistrate's recommendation to grant summary judgment to Defendants on the Section 1983 claims.

**Motion to Strike**

The Magistrate recommends the Court deny the Motion to Strike Reply Affidavits (Doc. No. 46). Horner has not objected to the recommendation and this Court finds the Magistrate's reasoning (Doc. No. 53, at 8) sufficient for denying the Motion.

### CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. No. 30) is granted and Plaintiff's Motion to Strike (Doc. No. 46) is denied. Case is dismissed.

IT IS SO ORDERED.

                                       s/ *Jack Zouhary*
                                       JACK ZOUHARY
                                       U. S. DISTRICT JUDGE

                                       March 21, 2010